IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN L. LORD,<br><br>    Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>    Defendant. | 8:14CV131<br><br>MEMORANDUM AND ORDER |

    This matter is before the court on defendant's motion to affirm the administrator's decision, Filing No. 14. This is an action for judicial review of an administrative determination denying benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* specifically, 29 U.S.C. § 1132(a)(1)(B) [ERISA Section 502(a)(1)(B)]. The plaintiff alleges defendant wrongfully denied his request for medical plan benefits.

## BACKGROUND

    At all times material to this action, the plaintiff was insured under a self-insured plan offered by New York Life Insurance Company, The Group Plan for New York Life Agents (hereinafter referred to as the "Policy") issued by the defendant, and said Policy was in effect at all times material herein. Plaintiff alleges that defendant Aetna denied payment for corrective surgery required due to his diagnosis of spinal stenosis. He is a member under the self-insured plan offered by New York Life Insurance Company, The Group Plan for New York Life Agents (the "Plan"), dated January 1, 2012. Aetna serves as Claims Administrator under the Plan for medical coverage, including the coverage at issue here. *See* Filing No. 13, Summary Plan Document ("SPD") at 118 (AR000373).

Doctors diagnosed plaintiff with spinal stenosis with neurogenic claudication. Filing No. 13, AR000007, AR000037-38, AR000068.  Plaintiff's surgeon, Dr. Timothy Burd of the Nebraska Spine Hospital, met and discussed options with plaintiff.  Dr. Burd's notes state he and the plaintiff had a "discussion of surgery once again for spinal stenosis L3-4."  *Id.* at AR000039.  His notes then indicate that Lord "does not have insurance benefits for the X-STOP at L3-4 and has questions about how to proceed." AR000039.  Ultimately, although Lord "is a good candidate for the X-STOP procedure," "[u]nfortunately he does not have insurance benefit."  *Id.* at AR000040.  Nonetheless, the "patient does not wish to proceed with a decompression laminectomy and would rather pay for the X-STOP procedure."  *Id.* at AR000040.

Thereafter, Dr. Burd proceeded with the X-Stop surgery.  Dr. Burd, as the provider, appealed at the Level One stage, and Aetna upheld its original determination in two letters dated June 6 and 19, 2013.  *Id.* at AR000057-60.  Aetna denied coverage because it "considers inter-spinous distraction (e.g., the Coflex inter-spinous stabilization spinal implant, Eclipse inter-spinous distraction device, ExtenSure bone allograft inter-spinous spacer, X-Stop device, and the TOPS System) for spinal stenosis or other indications to be experimental and investigational."  *Id.* at AR000057, 59.  The letters gave the provider a 60-day appeal date.  Dr. Burd, the provider, appealed at a Level Two, and Aetna upheld its original denial.  *Id.* at AR000081-82.  Aetna's response stated:

> A charge for a service or supply is not covered to the extent that it is determined by us to be experimental or investigational.  An Aetna medical director, who was not involved in previous determinations, has reviewed your final appeal and determined that the services described by code(s) 0171T are not eligible for payment.  Aetna considers inter-spinous distraction (e.g., the Coflex inter-spinous stabilization spinal implant, Eclipse inter-spinous distraction device, ExtenSure bone allograft inter-

>   spinous spacer, X-Stop device, and the TOPS System) for spinal stenosis or other indications to be experimental and investigational, as the clinical effectiveness has not been conclusively demonstrated in the peer-reviewed medical literature.

*Id*. at AR000081.

Thereafter, the plaintiff likewise filed a Level One appeal which was denied for the same reasons. The review team included three individuals who were not involved in the original determination of benefits: (1) an Aetna medical director who was a licensed board-certified physician in internal medicine and infectious diseases, (2) an appeal nurse consultant, and (3) a complaint and appeal analyst. In its denial letter dated October 4, 2013, Aetna stated, it "considers inter-spinous distraction (for example X-Stop device . . .) for spinal stenosis or other indications, experimental and investigational as the peer-reviewed medical literature has not sufficiently demonstrated the safety and efficacy of this procedure." *Id*. at AR000090.

Plaintiff appeals Aetna's denial of coverage for this surgery and the related services.

## STANDARD OF REVIEW

Under ERISA, when a denial of benefits is challenged through judicial review, "the record that was before the administrator furnishes the primary basis for review." *Trustees of Electricians' Salary Deferral Plan v. Wright*, 688 F.3d 922, 925 (8th Cir. 2012); *see also Brown v. Seitz Foods, Inc., Disability Benefits Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998) (suggesting a district court should ordinarily limit its review to the evidence contained in the administrative record).

The underlying purpose of ERISA is to protect the interests of participants in employee benefit plans and their beneficiaries. 29 U.S.C. § 1001(b); *see also Firestone*

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). Under ERISA, a plan "participant or beneficiary" may bring a "civil action" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see CIGNA Corp. v. Amara,* — U.S. —, —, 131 S. Ct. 1866, 1871 (2011).

An administrator's decision is reviewed for an abuse of discretion when an ERISA plan grants discretionary authority to the plan administrator to determine eligibility for benefits. *Jobe v. Medical Life Ins. Co.*, 598 F.3d 478, 481 (8th Cir. 2010); *Bruch*, 489 U.S. 115. However, the district court should apply a de novo standard of review, rather than an abuse of discretion standard, when the "administrator did not exercise the discretion granted to it." *Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 868 (8th Cir. 2006). A less deferential standard of review (de novo review) is also appropriate where there is material, probative evidence demonstrating that a serious procedural irregularity existed that caused a serious breach of the plan administrator's fiduciary duty. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998), *abrogated in part by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *see Wrenn v. Principal Life Ins. Co.*, 636 F.3d 921, 924 n.6 (8th Cir. 2011) (recognizing "[a]fter the Supreme Court's decision in *Glenn*, the *Woo* sliding-scale approach is no longer triggered by a conflict of interest," but "[t]he procedural irregularity component of the *Woo* sliding scale approach may . . . still apply in our circuit post-*Glenn*"); *Wade v. Aetna Life Ins. Co.*, 684 F.3d 1360, 1362 n. 2 (8th Cir. 2012).

Summary plan descriptions form part of the written documents required by ERISA and will prevail "in cases where the summary granted <u>a beneficiary</u> certain rights or privileges that the policy did not." *Jobe,* 598 F.3d at 481 (emphasis added).

However, an SPD cannot grant a plan administrator discretion to determine eligibility for benefits when the plan itself does not. *Id.* at 481-86. A grant of discretion to an administrator is a critical provision. *Id.* at 483-84 (stating that a grant of discretion to the plan administrator, appearing only in a summary plan description, does not vest the administrator with discretion where the policy provides a mechanism for amendment and disclaims the power of the summary plan description to alter the plan.). "The policy's failure to grant discretion results in the default de novo standard." *Id.* at 486 (noting that due to the policy's silence in the face of a decades-old Supreme Court ruling establishing a default de novo standard of review, the summary plan description does not summarize a provision of the policy related to discretion, but instead enlarges the administrator's authority). In the Eighth Circuit, the policy will control over the inconsistent grant of discretion to the administrator in the summary plan description. *Id.*; *see also Ringwald v. Prudential Ins. Co. of Amer.*, 609 F.3d 946, 949-50 (8th Cir. 2010) (finding de novo review appropriate where "there are no terms in the plan which allow it to be amended by inserting into the SPD such critical provisions as the administrator's discretionary authority to interpret the plan or to determine eligibility for benefits.").

In conducting de novo review, the court gives no deference to the administrator's decision. *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 660 (8th Cir. 1992). The district court is not limited to the fiduciary's explanation of its denial. *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993).

Under the abuse of discretion standard, the court will reverse if the plan administrator's decision is inconsistent with plan goals, renders other terms meaningless, superfluous or internally inconsistent, conflicts with the substantive or procedural requirements of ERISA, is inconsistent with prior interpretations of the same

words, or is contrary to the plan's clear language. *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1258 (8th Cir. 2012). When the administrator is also the insurer, the administrator has a conflict of interest that must be given "some weight" in the abuse-of-discretion calculation. *Id.* at 1258-59; *Glenn*, 554 U.S. at 118. The significance of this factor depends on the circumstances of the particular case. *Id.*

A plan administrator's decision is an abuse of discretion if it is not supported by substantial evidence. *Wrenn*, 636 F.3d 925. Substantial evidence means "more than a scintilla but less than a preponderance." *Darvell v. Life Ins. Co. of North Amer.*, 597 F.3d 929, 935 (8th Cir. 2010). A plan administrator abuses its discretion when it ignores relevant evidence or fails to "address the extensive medical evidence relating to [the claimant's] disability or the consistent conclusions of her doctors and various [plan administrator] personnel that she could not work." *Wilcox v. Liberty Life Assurance. Co. of Boston*, 552 F.3d 693, 701-02 (8th Cir. 2009) (quoting *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 885 (8th Cir. 2002)): *see also Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 681 (8th Cir. 2005) (stating that it is abuse of discretion to ignore evidence that is directly related to a plan's definition of disability). A plan administrator abuses its discretion when it "focuse[s] on slivers of information that could be read to support a denial of coverage and ignore[s]—without explanation—a wealth of evidence that directly contradicted its basis for denying coverage." *Wilcox*, 552 F.3d at 701-02.

A plan fiduciary abuses its discretion in accepting the opinion of a reviewing physician over the conflicting opinion of a treating physician when the record does not support it. *Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009). However, although an ERISA plan administrator need not

6

accord special deference to a treating physician's opinion, an administrator may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 834 (2003). Further, an ERISA administrator, though entitled to seek and obtain a professional peer review opinion, "is 'not free to accept this report without considering whether its conclusions follow logically from the underlying medical evidence." *Wilcox* 552 F.3d at 700-01; *see Glenn,* 554 U.S. at 118 (finding a plan administrator had emphasized a certain medical report that favored a denial of benefits, had de-emphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence.).

## DISCUSSION

### A. Exhaustion

Defendant first argues that the court should dismiss this case as the plaintiff failed to completely exhaust his administrative remedies. The court agrees with the defendant that ERISA requires the parties to exhaust his administrative remedies before appealing to the court. *See* 29 U.S.C. § 1133; *Brown v. J.B. Hunt Transp. Servs.,* 586 F.3d 1079, 1084 (8th Cir. 2009). However, the court finds in this case that exhaustion would have been futile. Plaintiff and his physician had already gone through three appeals, and the answer was in the negative each time. As discussed in the merits section below, there was nothing else plaintiff could argue on appeal that would have changed the result. Thus, the court agrees with the plaintiff that any further attempt was futile. *Brown*, 586 F.3d at 1084 (exhaustion not required "if doing so would prove futile").

### B. Merits of the motion

The SPD includes a provision governing "Experimental or Investigational Treatment." Filing No. 13, at AR000302-303. This section provides the following:

> Covered Expenses include charges made for Experimental or Investigational devices, treatments or procedures, provided all of the following conditions are met:
> • You have been diagnosed with cancer or a condition likely to cause death within one year or less;
> • Standard therapies have not been effective or are inappropriate;
> • Aetna determines, based on at least two documents of medical and scientific evidence, that you would likely benefit from the treatment;
> • There is an ongoing clinical trial. You are enrolled in a clinical trial that meets these criteria:
> > • The drug, device, treatment or procedure to be investigated has been granted investigational new drug (IND) or Group c/treatment IND status;
> > • The clinical trial has passed independent scientific scrutiny and has been approved by an Institutional Review Board that will oversee the investigation;
> > • The clinical trial is sponsored by the National Cancer Institute (NCI) or similar national organization (such as the Food & Drug Administration or the Department of Defense) and conforms to the NCI standards;
> > • The clinical trial is not a single institution or investigator study unless the clinical trial is performed to an NCI- designated cancer center; and
> > • You are treated in accordance with protocol.

*Id.* at AR000302-303. The SPD further states under "General Exclusions" that "Not every medical service or supply is covered by the Plan, even if prescribed, recommended, or approved by your Physician . . . . The Plan covers only those services and supplies that are Medically Necessary and included in the 'Covered Expenses' section of this SDP." *Id.* at AR000330. Under the provision titled "Claims Administrator," the SPD provides that the "Claims Administrator has the exclusive and final discretionary authority to determine whether or not a participant's (or Dependent's)

8

claim for benefits will be approved." *Id.* at AR000373.  The policy then names Aetna Life Insurance Company as the Claims Administrator of Aetna Medical Coverages.  *Id.*

Aetna's Clinical Policy Bulletin ("CPB"), upon which the denial was based in this case, states:

> Experimental and Investigational Interventions
>
> • Aetna considers any of the following injections or procedures experimental and investigational:
> • Inter-spinous and interlaminar distraction (e.g., the Aspen spinous process fixation system, the Coflex interlaminar stabilization spinal implant, the Coflex-F implant for minimally invasive lumbar fusion, Eclipse inter-spinous distraction device, ExtenSure bone allograft inter-spinous spacer, **X-Stop device**, and the TOPS System) for **spinal stenosis** or other indications)

*Id.* at AR000159-160 (emphasis added).  Defendant also believes this is experimental based on the lack of medical literature, which defendant summarizes as:

> • The National Institute for Health and Clinical Excellence (NICE, 2006) which concluded that evidence of efficacy for this type of device is limited and is confined to the medium and short term.  (*Id.* at AR000187)
> • The North American Spine Society (NASS, 2007) concluded that there insufficient evidence to support the use of the XSTOP in persons with lumbar spinal stenosis.  (*Id.* at AR000188)
> • The Food and Drug Administration (2004) Orthopedic and Rehabilitation Devices Panel voted 5 to 3 to recommend a "not approvable" decision for the X-Stop. The Panel cited concern with the need to identify the patient population that is most likely to benefit from the device, noting that overall effectiveness was not demonstrated in a majority of the clinical study population. The Panel also cited concerns with the longer term effectiveness of the device (longer than 2 years), with potential bias in the clinical study, and with the need for radiographic or other objective evidence of the device's mechanism of effect on the spin in patients.  *Id.* at AR000187.

Based on the above, the CPB stated that "[i]n summary, the clinical value of X-Stop for patients with [lumbar spinal stenosis] is still uncertain.  In particular, whether its reported benefit will decline over time will require more research with longer-term evaluation." *Id.* at AR000188.  Additionally, the administrative record contains supporting medical

9

literature provided by administrator published as late as 2011 and 2012. *Id.* at AR000249.

Plaintiff first argues that the defendant as plan administrator "will receive a direct financial benefit as plan insurer." *Woo*, 144 F.3d at 1161. The defendant points out, however, that the Supreme Court has stated that a conflict of interest is only a factor to be considered. *Glenn*, 554 U.S. 105. Likewise, the Eighth Circuit has stated that "the *Woo* sliding-scale approach is no longer triggered by a conflict of interest, because the Supreme Court clarified that a conflict is simply one of several factors to be considered under the abuse of discretion standard." *Carr v. Anheuser-Busch Cos.*, 495 Fed. App'x 757, 763-64 (8th Cir. 2012). The court finds that Aetna's interest in this decision is only one factor for consideration.

Further, plaintiff contends that the X-STOP procedure has given him lasting pain relief, something he could not obtain with previous pain management and procedures. The court is of the opinion, however, absent law to the contrary, and plaintiff has cited none, that this is not the criteria for whether a procedure is covered under the policy.

An administrator's decision is reviewed for an abuse of discretion when an ERISA plan grants discretionary authority to the plan administrator to determine eligibility for benefits. *Jobe v. Medical Life Ins. Co.*, 598 F.3d 478, 481 (8th Cir. 2010). The Plan in this case clearly grants discretionary authority to the plan administrator, as previously cited herein. The "[c]laims Administrator has the exclusive and final discretionary authority to determine whether or not a participant's (or Dependent's) claim for benefits will be approved." Filing No. 13 at AR000373. The court reviews the decision under an abuse of discretion standard.

10

The court has carefully reviewed the administrative record, and finds the plan administrator did not abuse his discretion in this case. The administrator based its decision on identified medical reasons and literature. The Policy clearly excludes the X-STOP surgery. There is no ambiguity. The plan administrator has the discretion to make these decisions. A plaintiff needs good cause before allowing evidence outside of the administrative record. *Brown v. Seitz*, 140 F.3d at 1200 (suggesting a district court should ordinarily limit its review to the evidence contained in the administrative record). Under the circumstances of this case, the court finds there is no good cause for permitting evidence outside of the record. Further, plaintiff definitely knew that the defendant would not pay for his surgery due to the exclusion, and he chose to proceed with the surgery on his own. Such knowledge supports the fact that plaintiff knew of the exclusion in advance and that it was not ambiguous. Accordingly, the court finds the administrator's decision must be affirmed.

THEREFORE, IT IS ORDERED that defendant's motion to affirm administrator's decision, Filing No. 14, is granted.

Dated this 16th day of October, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge